FARMERS & MERCHANTS BANK OF ULYSSES, APPELLEE, V. R. J. TATE, APPELLEE; G. L. SMITH, APPELLANT.

FILED MAY 4, 1914.   No. 17,616.

1. **Process: NEW PARTIES: SUMMONS TO ANOTHER COUNTY.** Where, in an action by the indorsee of a promissory note against the maker thereof alone, the maker answers, and alleges that the transfer of the note by the payee thereof to such indorsee was without consideration and a mere device on the part of the payee and his indorsee to enable the latter to fraudulently collect the note for the benefit of the payee, it is not error for the court, upon the application of the maker, to order that the payee be impleaded in such action; and, where the payee is so impleaded, he is properly brought within the jurisdiction of the court by a summons issued to the sheriff of any county in the state where he resides and duly served upon him in such county.

2. **Bills and Notes: PAYMENT.** Where, in the purchase of real estate, the vendee pays a portion of the consideration in cash, and enters into a written contract with the vendor for the payment of the balance of the purchase price at a stipulated time, and at the same time, and as a part of the transaction, signs and delivers to the vendor a promissory note, the payment by the vendee, or by his agent for him, of the entire contract price of the land purchased, less the cash payment made at the time of the purchase, operates as a payment and full satisfaction of the debt evidenced by the note so given.

3. ———: ———: LIABILITY OF PAYEE AS PRINCIPAL. And in such a case, if the payee of the note transfers the same to an innocent purchaser prior to the maturity of the contract, and subsequently collects the full amount of the contract price of the land from the maker's agent, during the absence of the maker, without disclosing to such agent the existence of the note, it is his duty to pay the note so held by his indorsee; and, in the event of his failure so to do, a judgment in favor of the indorsee in an action against the maker, wherein the payee is impleaded, fixing the liability of the payee as that of a principal, and the liability of the maker as that of a surety, is proper.

APPEAL from the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*L. S. Hastings, Frank Dolezal* and *E. A. Coufal,* for appellant.

*Sullivan & Rait, M. V. Beghtol* and *C. M. Skiles, contra.*

FAWCETT, J.

· August 9, 1909, defendant Tate bought from G. L. Smith 640 acres of land in Cheyenne county, for the agreed price of $15 an acre, which would be $9,600. Tate prepared a contract for execution, which recited the consideration named, and provided that he should pay $1,000 in cash and the balance, $8,600, March 1, 1910. He signed the contract so written and passed it over to Smith for signature. Smith thought that $1,000 was hardly a sufficient cash payment upon so large a transaction. Tate then proposed to give him his note for $2,000, payable on the same date that the contract would mature, stating that, if he (Tate) then failed to make good his contract by paying the balance of the agreed consideration, Smith would have $1,000 in cash and Tate's promissory note for $2,000. This was satisfactory to Smith, and he thereupon executed the contract. The contract was executed in duplicate and each of the parties took a copy thereof. Subsequently, and before the maturity of the note and contract, Smith assigned the note to the plaintiff bank, of which he was president and a director. Four days before the maturity of the note and contract Smith visited Fremont, the home of Tate, and, Tate being absent from the state on an extended visit to California, represented to Tate's business associate, Mr. Ehrhardt, that he (Smith) would like to have the deal closed up a few days in advance, of the date named in the contract, so as to enable him to close some other deals which he had maturing on March 1. Ehrhardt took Tate's copy of the contract, and met Smith in the office of the cashier of Tate's bank in Fremont. There, in the presence of the cashier, Mr. Knapp, Mr. Ehrhardt called the

attention of Smith to the terms of the contract, viz., that
the consideration for the purchase was $9,600, of which
Tate had paid $1,000, and that the balance due was $8,600.
This statement Smith verified. Thereupon, interest on the
$8,600 for the four days which the contract still had to
run was deducted from the $8,600 and the balance was
paid to Smith by Ehrhardt. Ehrhardt knew nothing about
the note which Tate had given, and Smith said nothing
about it at the time he received the payment upon the
contract. When the note matured plaintiff called upon
Tate for its payment. As soon as Tate returned home he
repudiated his liability upon the note, asserting that it
had been fully paid by the payment made by Ehrhardt
on February 25. He and his attorney visited Smith and
tried to prevail upon him to give up the note for cancela-
tion. This Smith refused to do; the substance of his re-
fusal being that Tate had prepared the contract, that no
mention of the note was made therein, and that he (Smith)
had the note and intended to keep it. Tate refused to pay,
and the bank brought this action against him alone to re-
cover the amount of the note. Tate answered, setting up
the facts above outlined, and alleged that plaintiff was
not a *bona fide* holder of the note; that the transfer by
Smith was a device; and that the bank and Smith were con-
spiring to defraud him out of the amount named therein.
Upon his application, the court made an order impleading
Smith. Thereupon summons was issued to the sheriff of
Butler county, where Smith resided, and service had upon
him in that county. Smith appeared specially, and ob-
jected to the jurisdiction of the court over him, on the
ground that the summons was served on him in Butler
county where he resided; that the petition shows that
Smith was not a party to the original action, but was
made such by defendant Tate; and that the pleadings show
that the action set out in Tate's cross-petition is not one of
the causes of action, provided for by the code, which could
be commenced in Dodge county, and service had upon
Smith in Butler or any other county in the state except
Dodge county. The special appearance was accompanied

by an affidavit stating the facts as pleaded in the special
appearance. The special appearance was overruled, where-
upon Smith answered, denying that the land was sold to
Tate for $9,600, and alleging that the consideration was to
be $11,600, to be paid as follows: $1,000 cash, $2,000 by
the promissory note in suit, and the balance of $8,600 on
March 1, 1910. Subsequently Smith added to his answer
an amendment that Tate, prior to the maturity of the con-
tract, had for a valuable consideration transferred the
same to the "Tate-Ehrhardt Land Company," a corpo-
ration, and that the payment made on February 25, 1910,
was made out of the funds of the corporation; that Tate
paid no part of the same. The reply of the plaintiff ad-
mits "that one G. L. Smith is the president and one of the
directors of the plaintiff bank," and denies all other alle-
gations in the answer and counterclaim of defendant Tate.
Upon the issues thus framed, the court, after hearing the
evidence and arguments of counsel, found in favor of the
plaintiff against defendant Tate, and against Smith, im-
pleaded with plaintiff; found the amount due upon the
note in favor of plaintiff from Tate and Smith to be
$2,366.60, and that as between Tate and Smith the duty
and obligation to pay the sum so found is a primary duty
and obligation as to Smith, and a secondary obligation and
duty as to Tate; and entered judgment that plaintiff have
and recover from Smith, as principal debtor, and from
Tate, as his surety, the sum so found due, together with
costs of the action; that Smith pay at once to plaintiff
the said sum, and that plaintiff accept and receive such
payment in full satisfaction of the judgment; that, in
case Smith should fail or refuse to pay the sum as afore-
said, execution issue therefor against him, but, in case
sufficient property of Smith cannot be found to satisfy
such execution, then and in that case execution shall be
satisfied by seizure and sale of the property of defendant
Tate, who should thereupon be subrogated to all the rights
of the plaintiff in the judgment. Smith appeals.

The only question of law we deem it necessary to con-
sider is the one raised by the special appearance of Smith;

that is to say, could Smith, who was a resident of Butler county, by a summons served upon him in that county, be brought into the action, commenced by plaintiff against Tate alone and then pending in Dodge county? The district court properly answered this question in the affirmative. A simple illustration will show the correctness of the holding of the learned trial judge: Suppose, after Smith had collected the full amount named in the contract from Tate's agent during Tate's absence and without his knowledge or consent, Tate, upon learning that Smith had made the pretended sale of the note to plaintiff, had commenced a suit in equity to obtain a cancelation of the note, and plaintiff and Smith had been residents of different counties. Could he have commenced his suit in the county of plaintiff's residence and issued summons for Smith to the county of his residence? Clearly, yes. He could have commenced such a suit in the county where either of the parties resided and issued summons to the county of the residence of the other. The fact that plaintiff initiated the litigation without joining its alleged coconspirator as a party did not deprive defendant of his right to have the entire controversy settled in the one action.

The fact that the contract of sale was set out in the cross-petition and introduced in evidence cuts no figure in this case, except as evidence offered by defendant Tate to corroborate his testimony as to the facts and circumstances which led to his giving Smith the note in suit. If the purchase price of the land bought by Tate from Smith was $9,600 and the note in controversy was given as part of the consideration for that purchase, it matters not whether the note was given at or subsequent to the time the contract was actually signed and delivered, or whether or not it was indorsed upon the contract as a payment thereon. That it was so given is established by the overwhelming preponderance of the evidence. We are not surprised that the trial court so found. It could not have found otherwise. The question as to whether on February 25, 1910, the contract belonged to Tate individually or to the "Tate-Erhardt Land Company" is immaterial, so far

as Smith is concerned. The only question material here is, has Smith been paid the full consideration for the land which he sold to Tate? If so, he has no right to compel Tate to pay the note which represented simply an unpaid portion of that contract at the time the note was given. Courts of justice, in these days, steadfastly refuse to juggle with legal technicalities to defeat justice. The evidence is clear, explicit and overwhelming that Tate bought from Smith 640 acres of land at $15 an acre, which would amount to $9,600; that he paid $1,000 in cash at the time of purchase; and that subsequently, and during Tate's absence from the state, Smith went to Fremont, where Tate then resided, and obtained from Tate's business associate the full sum of $8,600, concealing from him the fact that he held Tate's note for $2,000. Upon that payment being made, he was in duty bound to return to Tate his note. If he had made a *bona fide* sale of the note to an innocent purchaser for value, it was his duty to have so advised Tate's agent, and to have only collected upon the contract $6,600. By the course pursued, he is now attempting, under the most flimsy kind of a legal technicality, to obtain from Tate $2,000, which he never agreed to pay. Such an attempt will always receive at the hands of this court scant consideration.

The judgment of the district court is in all things

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.